ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| CONSEJO DE TITULARES DEL CONDOMINIO MAR DE ISLA VERDE<br><br>Apelado<br><br>v.<br><br>MAGDA OFELIA ARROYO FUENTES Y JULIO DÍAZ OLIVERA Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS. DEMANDADOS JANE DOE; JOHN DOE<br><br>Apelante | TA2025AP00420 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Número: CA2025CV00920<br><br>Sobre: Interdicto Preliminar; Interdicto Permanente |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de diciembre de 2025.

Comparece ante nos, Magda Arroyo Fuentes, Julio Díaz Olivera y la Sociedad Legal de Gananciales compuesta por ambos (apelantes) y nos solicitan que revoquemos una *Sentencia*[1] emitida y notificada el 31 de julio de 2025 por el Tribunal de Primera Instancia, Sala Superior de Carolina, (TPI o foro primario). En ella, el foro primario expidió un auto de interdicto preliminar y permanente presentado por el Consejo de Titulares del Condominio Mar de Isla Verde (Consejo de Titulares o parte apelada). En consecuencia, ordenó a los apelantes a devolver el área comunal y al Consejo de Titulares le ordenó la restauración del área a su estado original.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

---

[1] Entrada núm. 64 en el expediente electrónico del portal del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del Poder Judicial.

**I.**

El Consejo de Titulares incoó la demanda de epígrafe como recurso extraordinario en contra de los apelantes en la que suplicaron al foro primario una sentencia declaratoria más la expedición de un interdicto preliminar y un interdicto permanente. Lo antes, con el fin de que se ordenara la devolución de un área común perteneciente al Consejo de Titulares del Condominio Mar de Isla Verde, a su estado original, que se declarara ilegal la ocupación y la edificación en dicha área común ocupado por los apelantes sin autorización.[2] En particular, el Consejo alegó que los apelantes son titulares de la cabaña G-6[3] y en el balcón de dicha cabaña constaba un extractor. El Consejo de Titulares expuso que, el área donde ubicaba el extractor fue ocupada por los apelantes y al eliminar el extractor del área, afectaron la ventilación y la extracción de gases del estacionamiento soterrado. Además, cerraron las ventanas laterales de la cabaña, alterando así, la fachada del condominio en violación a la escritura matriz sin autorización del Consejo de Titulares. Por dichos motivos, la parte apelada solicitó la devolución a su estado original del área en controversia. Asimismo, en la petición de sentencia declaratoria, reclamó la ilegalidad de la ocupación y la edificación del área constituida por los apelantes.

En atención a lo antes, el 4 de abril de 2025, el foro primario celebró una audiencia en la cual comparecieron las partes y luego emitió una *Orden*[4] en la que señaló una vista para dilucidar en los méritos las causas de acción instadas por la parte apelada. En ella, ordenó a las partes a preparase para formalizar estipulaciones de hechos y auscultar la posibilidad de un acuerdo transaccional.

---

[2] *Íd.*, Entrada núm. 1.
[3] Según surge de la *Moción conjunta para estipular hechos y en cumplimiento de orden*, las cabañas G-6 y G-7 fueron agrupadas en una sola finca, mediante Escritura de Agrupación núm. 7, otorgada ante el Notario Enrique Rodríguez Negrón el 4 de febrero de 1999.
[4] Entrada núm. 2 en el expediente electrónico del portal de SUMAC del Poder Judicial.

Dispuso sobre la hora y fecha para las partes visitar la finca en controversia para comparar el área ocupado con los planos inscritos en el Registro de la Propiedad y auscultaran posibilidad de transacción. Ordenó a ambas partes informar y cargar en SUMAC todos los documentos que interesaban presentar como prueba en la vista junto con la información de las partes, testigos y abogados.[5]

En cumplimiento con lo anterior, el 3 de abril de 2025 los apelantes acreditaron una *Moción al Expediente Judicial*[6] en la que anunciaron la siguiente prueba: (a) Convocatoria a Asamblea del 11 de abril de 2025 y Estado Financiero del 2024; (b) Estudio de título de la finca G-6 y la finca G-7 donde indica que está libre de servidumbres y de condiciones restrictivas; (c) Fotos de extractores en parking de lado este y oeste; (d) Escritura de añadidura de estacionamientos y plano del condominio Mar de Isla Verde tomada del registro de La Propiedad; y (e) Escritura de Compraventa del apartamento G-6. La parte apelada acreditó su propia lista en cumplimiento de la orden judicial. Asimismo, el 9 de abril de 2025, las partes presentaron una *Moción conjunta para estipular hechos y en cumplimiento de orden*[7] en la que informaron los hechos estipulados[8].

---

[5] *Íd.*, Entrada núm. 20.

[6] *Íd.* Entrada núm. 15.

[7] *Íd.*, Entrada núm. 21.

[8] a. Mediante la escritura número 52 del 17 de junio de 1974 ante el Notario Público Carlos A. Todd, Sobre Régimen de Propiedad Horizontal se constituyó el régimen de propiedad horizontal en el Condominio Mar de Isla Verde ubicado en la Carretera 187, Carolina. b. Posteriormente se rectifica dicha escritura número 52 mediante escritura número 85 del 20 de agosto de 1975 sobre Aclaración y Rectificación de Régimen de Propiedad Horizontal ante el Notario Eberto J. De Vizcarrondo Armstrong, a los efectos de aclarar y rectificar las descripciones registrales de algunos apartamentos de Mar de Isla Verde, clasificación de áreas de estacionamientos, el uso que se le dará a la parcela de terreno adyacente a la propiedad donde enclava el condominio y aclara que el área de los clósets no es área común. c. Ambas escrituras inscritas en el Registro de la Propiedad de Puerto Rico. d. El Condominio Mar de Isla Verde en Carolina consta de 195 apartamentos, con sus áreas comunes, áreas privadas y estacionamientos. e. Las descripciones registrales de las Cabañas según descritas en la Escritura Matriz son como sigue: a. Cabaña número G seis (G6): "Apartamento localizado en el Piso Número Uno del edificio conocido como ´Mar de Isla Verde´, que radica en el kilómetro dos hectómetros uno de la Carretera Estatal Número Ciento Ochenta y Siete (187) en el Barrio Boca de Cangrejos, Carolina, Puerto Rico. Este apartamento tiene un área superficial total de Cuatrocientos Noventa y Ocho Pies Cuadrados con Setenta y Siete céntimos de Otro (498:77 p.c.). Su entrada principal da hacia el Oeste y se comunica con pasillo comunal que da al vestíbulo

Con relación a ello, la parte apelada desistió de las alegaciones relacionadas a la presunta alteración a la fachada, por lo que el TPI emitió una *Sentencia Parcial*[9] en la que acogió el desistimiento sin perjuicio de las alegaciones 18 y 19 de la demanda.

En cumplimiento con el señalamiento calendarizado, la vista de *injunction* inició el 11 de abril de 2025 por videoconferencia. La parte apelada presentó los siguientes testigos: la Dra. Lourdes López Galarza y la presidenta del Consejo de Titulares, la Sra. Irmaliz Pastrana Gómez (señora Pastrana Gómez). Durante el testimonio de la Dra. López Galarza se admitió como prueba documental lo siguiente: Exhibit 1-Carta fechada 26 de noviembre de 2019 y

---

común y que tiene salida a los elevadores y escaleras que a su vez dan salida al exterior del edificio. Este apartamiento es de tipo ´Efficiency´ y contiene una cocina, closets y un cuarto de baño. Colinda por el Norte, en veinte (20) pies seis (6) pulgadas, con la Cabaña Número G Siete; por el Sur, en veinte (20) pies seis (6) pulgadas con la Cabaña Número G Cinco; por el Este, en veinticuatro (24) pies cuatro (4) pulgadas con patio de dicho edificio; y por el Oeste, en veinticuatro (24) pies cuatro (4) pulgadas, con pasillo comunal. B. Cabaña Número G Siete (G7): "Apartamiento localizado en el Piso Número Uno del edificio conocido como ´Mar de Isla Verde´, que radica en el kilómetro dos hectómetros uno de la Carretera Estatal Número Ciento Ochenta y Siete (187) en el Barrio Boca de Cangrejos Carolina, Puerto Rico. Dicho apartamiento tiene un área superficial total de Quinientos Veintinueve Pies Cuadrados con Cincuenta y Dos céntimos de Otro (529.52 p.c.). Su entrada principal da hacia el Oeste y se comunica con pasillo comunal que da al vestíbulo común y que tiene salida a los elevadores y escaleras que a su vez dan salida al exterior del edificio. Este apartamiento contiene una sala, comedor, un dormitorio, cocina, closets y un cuarto de baño. Colinda por el Norte en veinte (20) pies seis pulgadas con patio de dicho edificio; por el Sur en veinte (20) pies seis (6) pulgadas, con la Cabaña Número G Seis; por le este en veinticinco (25) pies diez (10) pulgadas con patio de dicho edificio; y por el Oeste, en veinticinco (25) pies diez (10) pulgadas con pasillo comunal. f. Que los apartamentos del antes dicho Condominio identificados como las Cabañas G-6 y G-7 fueron agrupados en un solo apartamento, mediante la Escritura de Agrupación número 7 de fecha del 4 de febrero del 1999, otorgada dicha Escritura de Agrupación ante el Notario Público Lcdo. Enrique Rodríguez Negrón. Como consecuencia de dicho acto jurídico, el Apartamento G-6 cuenta con una cabida de 1,028.29 p/c. g. Que mediante la escritura número 209, de fecha del 16 de abril de 2004, ante el Notario Público Lcdo. Ángel A. Colón Vázquez, el matrimonio de los hoy Codemandados adquirió la Cabaña G-6. h. Que desde que los demandados compraron la cabaña G-6 en el año 2004 su apartamento ha tenido las mismas dimensiones. i. Al momento de presentarse el *Recurso* de epígrafe no existía y no existe construcción alguna llevándose a cabo en el área de controversia. j. Los espacios de estacionamientos en el sótano son áreas privadas. k. Que en enero de 2024 el Consejo de Titulares instaló 2 extractores en las colindancias noroeste y noreste del Condominio a más de 20 pies de cualquier puerta y ventana de dicho Condominio. En la actualidad están en funcionamiento y sacan hacia la atmósfera los gases que del sótano emanan, en cumplimiento con los códigos vigentes. l. Que en la actualidad no existe o está ubicado bajo el balcón objeto del presente litigio, extractor de tipo alguno. m. Que el área donde ubicaba originalmente el extractor en el ala noroeste frente a la cabaña G-3 fue cubierta con cemento, toda vez que se reubicó al extractor. n. Los Demandados, Magda Ofelia Arroyo Fuentes y Julio Díaz Oliveras, y la Sociedad Legal de Bienes Gananciales representada por ambos, su dirección física y postal es Condominio Mar de Isla Verde, Carretera 187, número 7185, Apartamento G6, Carolina Puerto Rico, 00979, teléfonos (787) 612-5186 y (787) 616-3805, su correo electrónico es: jdre01@gmail.com.

[9] *Íd.*, Entrada núm. 32.

Exhibit 1(A)-Fotografía que acompaña la carta del 26 de noviembre de 2019. Luego la señora Pastrana Gómez testificó y se presentó la siguiente prueba:  Exhibit 2-Escritura núm. 52 sobre Constitución de Régimen de Propiedad Horizontal; Exhibit 3-Carta fechada del 6 de junio de 2024 (primer documento en la entrada 23); Exhibit 3(B)-Las respuestas de los demandados a la carta del 6 de junio de 2024 (primer documento en la entrada 23); Exhibit 4-Carta fechada del 6 de diciembre de 2024 (segundo documento en la entrada 23); Exhibit 4(B)-Carta respuesta firmada por el Lcdo. Quintero Pintor (segundo documento en la entrada 23); Exhibit 4(C)-Cotización (segundo documento en la entrada 23); Exhibit 5-Fotografía (séptimo documento en la entrada 16); Exhibit 6-Fotografía (octavo documento en la entrada 16); Exhibit 7-Fotografía (noveno documento en la entrada 16), y a su vez, durante el contrainterrogatorio se presentó prueba estipulada por las partes, marcada como: Exhibit I-Escritura de rectificación (tercer documento en la entrada 16) y Exhibit II-Fotos de los planos (entrada 24).  Al concluir la audiencia, el TPI tomó el juramento al Ing. Aníbal Monge Guerrero y dejó pendiente el redirecto a la señora Pastrana Gómez. A esos efectos, en corte abierta, ordenó la continuación de la vista dejando los testigos anunciados bajo las reglas del tribunal.

Cónsono con lo anterior, el foro primario emitió una *Orden*[10] en la que consignó lo siguiente:

> Conforme con lo acordado en el juicio iniciado hoy, el tribunal continuará la **vista de entredicho preliminar y permanente** el 5 de mayo de 2025 a las 9:00 a.m.

A esos efectos y según previamente notificado, el 5 de mayo de 2025, el foro primario continuó la celebración de la vista de *injunction.* En la referida vista, se culminó el testimonio de la señora Pastrana Gómez con el redirecto y recontrainterrogatorio,

---

[10] *Íd.*, Entrada núm. 30.

respectivamente. Continuado el desfile de la prueba, la parte apelada presentó como testigo al ingeniero Aníbal Monge Guerrero, y durante su testimonio el foro primario admitió como prueba la hoja de plano A3 como Exhibit 8.[11] Concluido el testimonio, a solicitud de la parte apelada, el Tribunal marcó como Exhibit 9, la Certificación Registral correspondiente a la unidad G-6 del Condominio Mar de Isla Verde. La mencionada certificación registral validó la existencia de un solo plano inscrito ante el Registro de la Propiedad que consta en el folio A-3 como "Ground Floor Site & Grading Plan" del Condominio Mar de Isla Verde.[12] En el interín, el TPI descalificó como testigo al señor Roberto Iñesta González, testigo de los apelantes, por este haber escuchado parte de la declaración de otro testigo.

Una vez culminada la prueba de la parte apelada, los apelantes procedieron con su desfile de prueba con el testimonio de la Dra. Luz N. Mundo Rodríguez quien confrontó problemas técnicos por más de treinta minutos por lo que, el foro primario autorizó la posposición de su testimonio. Sin embargo, más adelante en la vista los apelantes entendieron que el testimonio vertido fue suficiente. Los apelantes presentaron como su próximo testigo al señor Julio Díaz Olivera quien, entre otras cosas, testificó sobre la fecha en que adquirió la cabaña G-6 y las dimensiones existentes del predio desde su posesión, entre otros asuntos.

Al finalizar la vista el Tribunal anunció que procedía a coordinar una inspección ocular del lugar para continuar su análisis ya que con el beneficio de dicha audiencia podría atender el asunto en controversia aún pendiente ante su consideración.

En anticipación a la inspección ocular, el 24 de mayo de 2025, los apelantes presentaron una *Moción sometiendo certificación*

---

[11] *Íd.*, Entrada núm. 36.
[12] *Íd.*, Entrada núm. 29.

*registral*[13] en la que manifestaron que surge del Registro de la Propiedad otra certificación registral que demuestra la existencia de dos (2) planos y, a su entender, y distinto a la certificación presentada por el Consejo de Titulares, certifica la existencia de un solo plano. En consecuencia, solicitaron al foro primario admitir como evidencia la nueva certificación registral que valida todos los planos inscritos ante el Registro de la Propiedad. Argumentaron que los referidos planos demostrarían que el área en controversia es un espacio denominado como área privada limitada o, en la alternativa, un área de uso común voluntaria y no necesaria. Igualmente, arguyeron que los planos demostrarían que la parte apelada reubicó el extractor en un área privativa perteneciente a los apelantes y, por consiguiente, el recurso extraordinario fue presentado luego de haber incurrido en incuria y falta de manos limpias. Mediante la referida moción, también le solicitaron al foro primario convertir el caso a la vía ordinaria con el fin de obtener un debido proceso de descubrimiento de prueba.

En respuesta, el Consejo de Titulares, mediante una *Moción en Oposición*[14], arguyó que el ingeniero Aníbal Monge Guerrero testificó solamente con relación al plano (Exhibit 8) que vertía su testimonio, sin embargo, no descartó la existencia de otro plano.

Entretanto, el 24 de mayo de 2025, el foro primario convocó una vista argumentativa para discutir las alegaciones antes expuestas.[15]

Pendiente lo anterior, mediante una *Réplica en Oposición*[16], los apelantes suplicaron al foro primario examinar con cautela la urgencia del recurso y la existencia los elementos necesarios para expedir el interdicto solicitado. También anunciaron como testigo a

---

[13] *Íd.*, Entrada núm. 44.
[14] *Íd.*, Entrada núm. 45.
[15] *Íd.*, Entrada núm. 46.
[16] *Íd.*, Entrada núm. 48.

la señora Magda Ofelia Arroyo Fuentes quien testificaría respecto al tiempo que lleva poseyendo como dueña de la cabaña G-6 en las mismas condiciones y dimensiones. Esto, con el fin de probar la adquisición prescriptiva del área en controversia.

El 2 de junio de 2025, se celebró la vista argumentativa.[17] Allí, el foro primario indicó que, desde el 11 de abril hasta el 5 de mayo, optó por consolidar las vistas de interdicto preliminar y permanente. Asimismo, el TPI denegó admitir en evidencia una nueva certificación registral, presentada por los apelantes, que demuestra la existencia de dos (2) planos, por esta ser tardía y carecer de justificación para su presentación. Ello, por entender que, los dos (2) planos fueron estipulados previamente por las partes.[18] Añadió que, los argumentos respecto a la relocalización del extractor por el Consejo de Titulares en el estacionamiento privativo de los apelantes no procedían por falta de contestación a la demanda. El foro primario dictaminó que los remedios solicitados eran tardíos; que los apelantes no solicitaron tiempo adicional para contestar la demanda y presentar alegaciones. En cuanto a la presentación de nueva prueba testifical, el TPI no la permitió por tardía.

Según previamente calendarizado, el 3 de junio de 2023, el foro primario realizó una inspección ocular en el Condominio Mar de Isla Verde donde observó el área en controversia. Surge del *Acta de inspección ocular[19]*, que el foro primario visitó el estacionamiento soterrado del edificio, localizado justo debajo de la cabaña G-6. Allí, observó una pieza de aluminio que cubre el área donde se instaló el antiguo extractor de aire. Aproximadamente a veinte (20) pies de distancia de la pieza de aluminio, localizó el nuevo extractor. Del mismo modo, acudió a la parte exterior de la cabaña G-6 donde observó un área cerrada, semejante a un balcón o terraza, a la cual

---

[17] *Íd.*, Entrada núm. 63.
[18] Regrabación de la vista celebrada el 2 de junio de 2025, minutos 15:38-15:49.
[19] *Íd.*, Entrada núm. 62.

solamente se accede desde su interior. Estableció que las partes estuvieron de acuerdo en que las paredes que delimitaban el área norte y oeste eran comunales y así mismo el TPI las identificó en el plano del edificio. Sin embargo, determinó que la pared que delimitaba por el este no surge del plano original del condominio.

Justipreciadas las posturas de las partes, la evidencia admitida con el beneficio de la inspección ocular, el 31 de julio de 2025, el TPI emitió la *Sentencia* apelada.[20] Expuso que de la descripción registral del condominio no se desprende la existencia de un balcón o terraza correspondiente a la cabaña G-6. En consecuencia, concluyó que los apelantes adquirieron el inmueble con discrepancias entre su descripción registral y su realidad física, la cual no está reflejada en el Registro de la Propiedad. Añadió, que los dos (2) planos del condominio, presentados como evidencia, aparentan ser contradictorios. No obstante, concluyó que el plano titulado "Ground Floor Site & Grading Plan" del Condominio Mar de Isla Verde, estipulado por las partes como Exhibit III, sugiere que el área del balcón, objeto de controversia, constituye un elemento común general del régimen de propiedad horizontal que rige al Condominio Mar de Isla Verde.

El foro primario determinó que la prueba admitida en evidencia no demostró que una mayoría del Consejo de Titulares autorizó a los apelantes o a los titulares anteriores a beneficiarse de esa área en detrimento de los demás condóminos. Sin embargo, indicó que el Consejo de Titulares toleró la actuación de los apelantes, al menos, por los últimos veinte (20) años. Por lo que incumplió con su deber de proteger la integridad del régimen de propiedad horizontal.

Además, el TPI estimó que el extractor instalado frente a la cabaña G-6 no estaba identificado como un elemento común en las

---

[20] *Íd.*, Entrada núm. 64.

escrituras constitutivas del régimen de propiedad horizontal. Aun así, determinó que su funcionamiento redunda en el bienestar general de los condóminos. En cambio, dicho extractor fue reubicado en el área de estacionamiento privada perteneciente a los apelantes. El foro primario concluyó que, de esta forma el Consejo de Titulares no acudió al tribunal con las manos limpias.

Cónsono con lo anterior, el balcón de la acabaña G-6 fue calificado por el TPI como área común general. Consecuentemente, el TPI determinó que, según la prueba presentada, la parte apelada sufrió un daño patente irreparable y susceptible de resarcirse mediante una acción interdictal. Ante ello, concedió el *injunction* preliminar y permanente a favor de la parte apelada. Sin embargo, ordenó al Consejo de Titulares a cubrir los costos de la restauración a su estado original del área en controversia, según diseñada en los planos del condominio y descrita en la escritura matriz.

En desacuerdo, los apelantes presentaron una solicitud de reconsideración, la cual fue declarada No Ha Lugar por el TPI mediante *Resolución*[21] del 5 de septiembre de 2025.

Inconforme, los apelantes comparecieron mediante el recurso de epígrafe y levantaron la comisión de tres errores, a saber:

> Erró el Honorable Tribunal de Primera Instancia, al no expresar a la parte demandada que la vista de interdicto posesorio y el juicio en su fondo fueran consolidados convirtiéndolo en un juicio en su fondo. Erró el tribunal al aplicar el interdicto posesorio a esta controversia y no convertirlo en un juicio por la v[í]a ordinaria o en la alternativa ordenar la continuación de los procedimientos por la vía ordinaria para dilucidar las controversias persistentes.
>
> Err[ó] el tribunal al clasificar el área como una de uso común sin esta estar mencionada en la escritura matriz, ni listada como uno de los elementos comunes enumerados en la escritura Matriz según requiere la ley de condominios y sin hacer distinción entre si es un área común general necesaria, área común general voluntaria o área común limitada.
>
> Err[ó] el tribunal al concluir que los demandados NO pueden adquirir o no adquirieron dicha área por prescripción adquisitiva ya que nuestro ordenamiento jurídico prohíbe la usucapión de los elementos comunes de un régimen de propiedad horizontal, toda vez que los elementos comunes

---

[21] *Íd.*, Entrada núm. 70.

generales al poderse enajenar por votación de dos terceras partes, también se podrían enajenar por medio de la prescripción adquisitiva.

En cumplimiento con nuestra *Resolución,* notificada el 9 de octubre de 2025, la parte apelada acreditó su alegato en oposición. En aras de ejercer adecuadamente nuestra función revisora, mediante *Resolución* emitida el 29 de octubre de 2025 ordenamos al TPI que remitiera el enlace las regrabaciones de las vistas celebradas, las cuales fueron recibidas el 30 de octubre de 2025. Con el beneficio de las comparecencias de ambas partes, así como con las regrabaciones de las vistas, procedemos a resolver.

## II.

### A. El interdicto preliminar y el *injunction* permanente

El *injunction* es un mandamiento judicial reglamentado por la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57, y por los Arts. 675 al 687 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3521-3533. Este "pretende prohibir u ordenar la ejecución de un acto, para evitar que se causen perjuicios inminentes o daños irreparables a alguna persona, cuando no hay otro remedio en ley adecuado". *Mun. Fajardo v. Srio. Justicia et al.*, 187 DPR 245, 255 (2012). A esos efectos, la concesión o denegación de un *injunction* precisa que su promovente demuestre la existencia de un daño irreparable y la ausencia de un remedio adecuado en ley para atenderlo. *Asoc. Vec. V. Caparra v. Asoc. Fom. Educ.*, 173 DPR 304, 319-320 (2008).

Como se sabe, la Regla 57 de las Reglas de Procedimiento Civil, *supra,* contempla tres tipos de *injunction,* a saber: el entredicho provisional, el *injunction* preliminar y el *injunction* permanente. El entredicho provisional se dicta sin notificación previa a la parte adversa ante una demanda o declaración jurada del solicitante de perjuicios, pérdidas o daños inmediatos e

irreparables y las razones que justifican su solicitud. Regla 57.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 57.1.

Por otro lado, el interdicto preliminar busca mantener el *status quo* mientras se dilucida el pleito. *Mun. Fajardo v. Srio. Justicia et al., supra.* Por un lado, evita que se convierta en académica la sentencia que finalmente se dicte al atender la petición de *injunction* permanente. Al mismo tiempo, evade que se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio. *Rullán v. Fas Alzamora,* 166 DPR 742, 764 (2006). Para su concesión, se deben evaluar: (1) la naturaleza de los daños que pueden ocasionárseles a las partes; (2) su irreparabilidad o la existencia de un remedio adecuado en ley; (3) la probabilidad de que el promovente prevalezca en el juicio; (4) la probabilidad de que la causa se torne académica de no concederse el remedio, (5) y el posible impacto sobre el interés público. Regla 57.3 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 57.3.

Dichos criterios son una guía sobre la discreción del foro primario para adjudicar el remedio interdictal. En cuanto al presente caso, cuando delimitamos los contornos de la concesión o denegatoria del interdicto, el promovente no tiene que demostrar la existencia o la inmediatez del daño irreparable ni la ausencia de remedio en ley que exige el *injunction* extraordinario regulado en la Regla 57 de Procedimiento Civil, *supra.* Esto se debe a que vindicar una servidumbre en equidad mediante una solicitud de *injunction* lo que procura es obligar al promovido al cumplimiento del contrato de carácter real que afecta a las partes. Por lo tanto, la mera violación de la servidumbre justifica el medio procesal del interdicto sin necesidad de probar daños o perjuicios sustanciales. *Ramírez Kurtz et als. v. SLG,* 214 DPR 986, 999 (2024).

El interdicto preliminar se expide mediante notificación a la parte adversa a la que se cita a una vista para mostrar causa.

Asimismo, la Regla 57(b) de las Reglas de Procedimiento Civil, *supra*, faculta la consolidación de la vista con el juicio en sus méritos. Conforme a lo anterior, la referida regla dispone lo siguiente:

> (b) *Consolidación de la vista con el juicio en sus méritos.* Antes o después de comenzada la vista para considerar una solicitud de *injunction* preliminar, el tribunal podrá ordenar que el juicio en sus méritos se consolide con dicha vista. Aun cuando no se ordene la consolidación, cualquier evidencia que sea admitida en la vista sobre la solicitud de *injunction* preliminar y que sea admisible en el juicio en sus méritos, pasará a formar parte del expediente del caso y no tendrá que presentarse nuevamente el día del juicio. El tribunal, al emitir su resolución, dictará inmediatamente una orden, especificando los hechos que ha determinado como probados en dicha etapa y ordenando los procedimientos ulteriores que sean justos en el pleito. Regla 57(b) de las Reglas de Procedimiento Civil, *supra.*

En aras de escudriñar el trasfondo legislativo, el Informe del Comité sobre Procedimiento Civil de 1978, indica que el inciso (b) de la referida Regla 57.2 de Procedimiento Civil, *supra*, fue adoptado de la Regla 65(a) de las Reglas de Procedimiento Civil Federal enmendadas en 1966. Allí, la explicación legislativa sostiene que la regla le otorga autoridad expresa a los jueces para la consolidación del interdicto, aun cuando la evidencia presentada sea a los fines primordiales de disponer sobre la aplicabilidad del interdicto preliminar. Conferencia Judicial de Puerto Rico, Comité sobre Procedimiento Civil: *Informe sobre las Reglas de Procedimiento Civil Propuestas*, a la pág. 181 (1978). Esta regla fue creada para evadir la duplicidad de prueba, cuando aquella provista en la vista de interdicto preliminar sea admisible en juicio. Esto, para subsanar el efecto práctico de un "doble juicio" que ocasiona dilaciones innecesarias. Véase además, *Fed.R.Civ.P.* 65(a), Notes of Advisory Committee on Rules, 1966 amendment.

Respecto a las órdenes judiciales, nuestro máximo foro apelativo ha sido enfático en la necesidad de disponer órdenes expresas. Sin embargo, también ha razonado en cuanto al análisis particular de cada caso donde se pueda desprender una

determinación implícita de difícil cuestionamiento. *Dávila, Rivera v. Antilles Shipping, Inc.,* 147 DPR 483, 506 (1999).

Asimismo, los factores que se deben tomar en consideración para emitir el recurso de *injunction* permanente son: (1) si el demandante ha prevalecido en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en ley; (3) el interés público implicado, y (4) el balance de equidades. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 428 (2008).

Por último, puntualizamos que la concesión de un *injunction* no es *ex debito justitiae* sino que descansa en la sana discreción del tribunal, por lo cual los tribunales apelativos solo intervendrán con la concesión o denegatoria de tal remedio ante un abuso de la facultad discrecional del tribunal inferior. *Plaza Las Américas v. N&H,* 166 DPR 631, 644 (2005).

### B. Ley de Condominios

El propósito detrás de la aprobación de la Ley Núm. 129-2020, 31 LPRA sec. 1921 et seq., mejor conocida como la Ley de Condominios de Puerto Rico (Ley de Condominios), según enmendada, fue reglamentar y facilitar la vida en convivencia, además de propiciar la disponibilidad de viviendas en un área limitada de terreno. *Vázquez et al. v. DACo,* 2025 TSPR 56, 216 DPR ___ (2025), pág. 3. Las disposiciones allí enmarcadas son aplicables al conjunto de apartamentos y elementos comunes de los cuales existe una declaración expresa de voluntad del inmueble sometido al régimen de propiedad horizontal mediante escritura pública presentada ante el Registro de la Propiedad. Dicha escritura expresará de forma clara y precisa el destino y uso del área comprendida en el inmueble. Solamente podrá ser alterado su uso cuando medie consentimiento de dos terceras partes de todos los titulares que, a su vez, reúnan dos terceras partes de las

participaciones en las áreas comunes. Ley de Condominios, *supra,* sec. 1921c.

La referida escritura matriz, una vez inscrita ante el Registro de la Propiedad, pasa a ser un estatuto privado que gobierna los condóminos o titulares. Por consiguiente, crea un estado de derecho que ha de ser aceptado por los sucesivos titulares. *Bravman, Gonzalez v. Consejo Titulares,* 183 DPR 827, 845 (2011). En este escenario, es imprescindible acudir a sus disposiciones cuando existen conflictos relacionados a la administración y el manejo de los asuntos relacionados al inmueble sometido al régimen de propiedad horizontal. *Trigo Margarida v. Junta de Directores*, 187 DPR 384, 396 (2012).

De otra parte, el requisito de inscripción constitutiva convierte al Registro de la Propiedad en un garantizador de la cabida, contrario a lo establecido en la norma general. De modo que, la realidad extra registral tiene que corresponder a la que surge del Registro de la Propiedad. Ante esta realidad, es de suma importancia que la escritura matriz identifique detalladamente los elementos comunes generales y los elementos comunes limitados. Igualmente, la referida ley, requiere que se identifique el destino de los elementos que lo configuran. *Bravman v. Consejo de Titulares, supra,* págs. 845-846.

Las áreas de uso común son aquellas requeridas en la concurrencia de varias propiedades bajo una misma estructura para viabilizar el funcionamiento de los apartamentos. Godreau, Michel J., *El condominio: el régimen de propiedad horizontal en Puerto Rico*, Ed. Dictum, 2019, pág. 139. A tenor con la Ley de Condominios, los elementos comunes se dividen en dos (2): necesarios y voluntarios. Los necesarios son todos los indispensables para el disfrute de la propiedad privada de los apartamentos, no son susceptibles de propiedad individual y están

sujetos al régimen de indivisión forzosa. Por su parte, los elementos comunes voluntarios pueden quedar sometidos a lo que dispongan los integrantes del régimen. Se permite su transformación de un elemento común en privado, siempre que exista el consentimiento de dos terceras partes de los titulares. Los elementos comunes también se clasifican en generales y limitados. Ley de Condominios, *supra*, sec. 1921p. Los limitados están destinados a cierto número de apartamentos con exclusión de los demás. *Íd.,* sec.1921t.

Los elementos comunes de las propiedades sometidas al régimen de propiedad horizontal son objeto de copropiedad a favor de cada titular del condominio. En consecuencia, es improcedente que estos titulares puedan perder su prerrogativa de ser reivindicados en la posesión y el dominio de los elementos comunes. Así, nuestro ordenamiento jurídico protege los derechos de los titulares ante la prohibición de la adquisición por prescripción adquisitiva de los elementos comunes. *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311, 351 (2012).

El Consejo de Titulares es guardián de los derechos propietarios de los titulares sometidos al régimen de propiedad horizontal. *Íd.* En aras de salvaguardar el bien común, la Ley de Condominios autoriza a la Junta de Directores a presentar acciones interdictales a nombre del Consejo de Titulares contra aquellos que cometan infracciones respecto al uso de los apartamentos bajo el régimen de Propiedad Horizontal. Ley de Condominios, *supra*, sec. 1922k.

### C. Apreciación de la Prueba

Como regla general, los tribunales apelativos, dada la deferencia debida a los foros de instancia, aceptan como correctas las determinaciones de hechos del foro primario, sin intervenir con la apreciación y la adjudicación de credibilidad que realiza el juzgador de los hechos en relación con la prueba testifical. *Pueblo v.*

*Negrón Ramírez,* 213 DPR 352, 909 (2024). Ello, debido a que, "[l]a tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz". *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778-779 (2022), citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013). Después de todo, es el juzgador de los hechos o el jurado quien escucha la prueba testifical y evalúa el comportamiento de los declarantes. *Pueblo v. Negrón Ramírez,* supra, pág. 910.

De conformidad, el Tribunal Supremo de Puerto Rico ha resuelto que, los tribunales apelativos intervienen con la apreciación de la prueba cuando: (1) el apelante demuestra la existencia de pasión, prejuicio, parcialidad o error manifiesto; o (2) si la apreciación de la prueba no concuerda con la realidad fáctica o esta es inherentemente imposible o increíble. *Pueblo v. Negrón Ramírez,* supra, pág. 912. A esos efectos, este estándar restringe la facultad revisora de los foros apelativos cuando impera el criterio de credibilidad en escenarios de prueba admitida. *Pueblo v. Toro Martínez,* 200 D.PR 834, 859 (2018).

**III.**

En la causa que nos ocupa, los apelantes, en esencia, plantean que el Tribunal de Primera Instancia erró tanto en el manejo del caso y controversia ante su consideración, así como en su análisis de la prueba y aplicación del derecho.

En primer lugar, los apelantes argumentan que, el foro primario incidió al no expedir una orden para la consolidación de la vista de interdicto preliminar y permanente conforme a la Regla 57.2(b) de Procedimiento Civil. A su vez, sostuvieron que, erró el foro primario en la aplicación de los requisitos enumerados en la Regla

57.3 de Procedimiento Civil para expedir el interdicto, por lo que debió llevar a cabo el pleito por la vía ordinaria.

Conforme adelantamos en el acápite anterior, en nuestro ordenamiento jurídico el *injunction* está regulado por la Regla 57 de Procedimiento Civil, *supra*. Las Reglas claramente conceden discreción al tribunal para consolidar la vista de *injunction* preliminar con la de *injunction* permanente, respecto al juicio en sus méritos. Esta Regla fue creada con el fin de evadir la duplicidad de prueba, cuando aquella provista en la vista de interdicto preliminar sea admisible en juicio.[22] Ello, para subsanar el efecto práctico de un "doble juicio" que ocasiona dilaciones innecesarias. Puntualizamos que, aun cuando nuestro más alto foro apelativo ha enfatizado que la mejor práctica es realizar órdenes expresas, esto no implica que las órdenes emitidas resulten inoficiosas de facto. *Dávila, Rivera v. Antilles Shipping, Inc.*, *supra*.

Según consta en el expediente del caso, los apelantes fueron debidamente emplazados y notificados con copia de la demanda incoada en su contra. Constatado lo anterior, el foro primario celebró una vista inicial el 4 de abril de 2025 durante la cual emitió múltiples órdenes a ambas partes en aras de que se anunciara la prueba en preparación a la siguiente audiencia evidenciaria sin hacer distinciones entre los remedios solicitados. Además, ordenó reuniones en el área de los hechos y que se agotaran esfuerzos transaccionales.

Posteriormente, el 11 de abril de 2025, el foro primario comenzó el desfile de prueba. Ese mismo día, el TPI emitió una *Orden*[23] en la que determinó que **el tribunal continuará la vista de entredicho preliminar y permanente** el 5 de mayo de 2025 a las 9:00 a.m.". Aun cuando la referida orden no utiliza la palabra

---

[22] Véase, además, *Fed.R.Civ.P.* 65(a), Notes of Advisory Committee on Rules, 1966 amendment.
[23] *Íd.*, Entrada núm. 30.

expresa de consolidación, hace hincapié a la continuación de ambos procesos en conjunto según autoriza la citada regla. En esa misma línea, en la *Minuta*[24] de la vista argumentativa, emitida el 16 de junio de 2025, el foro primario reiteró su determinación previa sobre la consolidación de la vista sobre *injunction* preliminar y permanente.

Conforme pormenorizamos anteriormente, la Regla 57.2(b) expresamente dispone que la consolidación de los procesos puede llevarse a cabo antes o después de comenzada la vista de *injunction* preliminar. Consecuentemente, el TPI no abusó de su discreción al consolidar la solicitud de vista de *injunction* preliminar con el permanente, toda vez que ordenó la continuación de los procesos conjuntamente al culminar la primera vista. Añádase a ello que, de un examen sosegado de los remedios notificados en la demanda surge que resultan similares.[25] A su vez, la parte apelante optó por no acreditar una alegación responsiva en el término dispuesto en nuestras reglas procesales y tuvo oportunidad de anunciar su prueba y confrontar la prueba de la parte contraria sobre la totalidad de las alegaciones y suplicas. Por otro lado, la concesión de un *injunction* no es *ex debito justitiae* sino que descansa en la sana discreción del tribunal, por lo cual los tribunales apelativos solo intervendrán con la concesión o denegatoria de tal remedio ante un abuso de la facultad discrecional del tribunal inferior. *Plaza Las Américas v. N&H, supra.*

De nuestro examen sosegado del recurso ante nos constatamos que, el Consejo de Titulares demostró, mediante

---

[24] *Íd.*, Entrada núm. 63.

[25] A modo ilustrativo citamos de la súplica a la pág. 12 de la demanda lo siguiente: 1. Que expida una orden de interdicto preliminar dirigida a los Demandados para que devuelvan al Consejo de Titulares en su estado original, el área común perteneciente al Consejo de Titulares so pena de desacato civil o criminal. 2. Que se expida una orden para que reviera la fachada a su estado original, so pena de desacato civil o criminal. 3. Que se exima a los Demandantes de la prestación de fianza o en la alternativa, imponga una fianza nominal de $1.00; ordene la urgente celebración de una vista de *Injunction* Preliminar. 4. Que declare Ha Lugar la demanda de autos emitiendo el correspondiente *injunction* permanente. 5. Que decrete sentencia declaratoria, declarando ilegal la ocupación y edificación del área común ocupada por los Demandados ordenando su inmediata restitución a su estado original.

prueba fehaciente, las violaciones intrínsecas al régimen de propiedad horizontal del Condominio Mar de Isla Verde. En síntesis, demostró que los apelantes incumplieron con lo dispuesto en la escritura matriz al aprovecharse de un área comunal sin el consentimiento de dos terceras partes de los titulares.  El criterio del daño irreparable es inaplicable ante la existencia de una violación a una restricción. En este caso, el área del balcón en controversia era un área comunal que fue restringida para uso privativo, dicho cambio violentó la restricción del uso sujeto al régimen de propiedad horizontal. Además, la violación del convenio o escritura matriz sujeto al régimen de propiedad horizontal genera una probabilidad de prevalencia en el juicio. Tomando en consideración lo antes, colegimos que el TPI no incidió en su análisis ya que de la prueba no surge la existencia de un riesgo de que la causa de acción se torne académica ante la inexistencia de un acuerdo por dos terceras partes de los titulares y por tratarse de un área común no susceptible de adquisición prescriptiva.

Con relación al interdicto permanente, en el presente caso se demostró que el TPI claramente indicó que la parte apelada no llegó con manos limpias y ordenó que el Consejo realizara la restauración del área a su propio costo como penalidad a su falta de diligencia en el cumplimiento de su deber de proteger y de asegurar la integridad del régimen de propiedad horizontal. Por tanto, observamos que se concedieron los interdictos solicitados en el pleito, pero a su vez el remedio provisto era el adecuado para subsanar el desface a los derechos de los titulares pertenecientes al régimen de propiedad horizontal.

Los apelantes señalan que el foro primario incidió al adjudicar el remedio interdictal cuando existía controversia sobre el tipo de elemento que constituye el área del balcón de la cabaña G-6.

Según pormenorizado anteriormente, el régimen de propiedad horizontal es de inscripción constitutiva. Una vez se inscribe la escritura matriz pasa a ser un estatuto privado que gobierna a los condóminos o titulares y obliga a terceros. *Bravman v. Consejo de Titulares,* supra, págs. 845-846.

Surge del expediente del caso, que el TPI tuvo ante sí la evidencia que consta en el Registro de la Propiedad, a saber: los dos (2) planos estipulados por las partes, la escritura matriz y la escritura de rectificación. Aun cuando el TPI no admitió como evidencia la certificación registral presentada por los apelantes, reconoció la existencia de los dos (2) planos identificados en la mencionada certificación registral. Conforme la apreciación de la prueba realizada entendió improcedente incluir evidencia que no constituiría cambio alguno en el análisis jurídico del caso y, así, salvaguardó la economía procesal de las partes y sus derechos. A tenor con lo anterior, concluyó que no surge de la descripción de la escritura matriz o de los libros del Registro de la Propiedad, que la cabaña G-6 estuviera constituida de un balcón. Tampoco existe evidencia que demuestre el consentimiento de los titulares para el cambio de uso del área. Por lo tanto, el foro primario, justipreció el valor probatorio de la totalidad de la prueba. Dentro de su sana discreción consideró la prueba testifical, la escritura matriz del condominio Mar de Isla Verde que surge del Registro de la Propiedad, así como los dos planos ante su consideración.

Finalmente, los apelantes subrayan, que el foro primario erró al determinar que en este caso no aplica el derecho de prescripción adquisitiva.

Conforme la normativa aplicable, los elementos generales necesarios son todos los indispensables para el disfrute de la propiedad privada de los apartamentos los cuales no son susceptibles de propiedad individual y están sujetos al régimen de

indivisión forzosa. Ley de Condominios, *supra,* sec. 1921p. Por su parte, los elementos comunes voluntarios pueden quedar sometidos a lo que dispongan los integrantes del régimen. Esto se permite, siempre que exista el consentimiento de dos terceras partes de los titulares. Conforme lo dispuesto en *Bravman, González v. Consejo Titulares, supra,* la Ley de Condominios veta la adquisición por prescripción adquisitiva de los elementos comunes, así sean voluntarios o generales. Solamente serán objeto de obtención por prescripción adquisitiva los apartamentos o fincas privativas que formen parte del régimen de propiedad horizontal. *Bravman, González v. Consejo Titulares, supra,* pág. 857-858.

Cabe resaltar que lo antes se refleja en el cuadro fáctico aplicable al presente caso el área común en el presente caso no es susceptible de prescripción adquisitiva. En su consecuencia no incidió el foro primario al no reabrir y continuar nuevamente el proceso por la vía ordinaria. Observamos que, mediante la vista argumentativa los apelantes solicitaron al TPI la admisión de nueva prueba testifical, particularmente la testigo señora Magda Ofelia Arroyo Fuentes, quien pretendía establecer el tiempo que posee el bien como dueña. Por constituir prueba acumulativa previamente admitida mediante el testimonio del señor Julio Díaz Olivera, el TPI correctamente indicó que el testimonio de la señora Arroyo Fuentes era acumulativa, tardía y resultaba innecesaria ante la inaplicabilidad de la doctrina de prescripción adquisitiva en este caso y controversia.

En virtud de un análisis detallado del expediente judicial con el beneficio de la regrabación de las vistas celebradas colegimos que, los apelantes tuvieron oportunidad de presentar y refutar prueba para rebatir las alegaciones vertidas por la parte apelada. Ante este cuadro fáctico, los apelantes no nos han presentado argumentos que sostengan su postura y nos muevan a intervenir con el manejo

del caso efectuado por el foro primario dentro de su sana discreción, así como la apreciación de la prueba debidamente presentada por ambas partes y la aplicación del derecho. Los errores señalados por los apelantes no se cometieron.

**IV.**

Por las razones que anteceden, confirmamos la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones